IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. JRR-23-407 |
| v. | * | |
| | * | |
| JASON KANE | * | |
| | * | |
| Defendant | * | |
| | ******* | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

On November 14, 2023, the defendant, Jason Kane, was Indicted in the United States District Court for the District of Maryland and charged with two counts of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), Distribution of Obscene Visual Representation of the Sexual Abuse of a Child, in violation of 18 U.S.C. § 1466A(a)(1), and Possession of Obscene Visual Representations of the Sexual Abuse of Children, in violation of 18 U.S.C. § 1466A(b)(1). *See* ECF 1. On January 15, 2025, he pleaded guilty to one count of Possession of Child Pornography. *See* ECF 29. The defendant will appear before this Court for sentencing on April 28, 2025. ECF 32.

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties have agreed upon a sentence of 120 months, however, there is no agreement as to the length of supervised release. ECF 30. Accordingly, the government requests that the Court impose the agreed upon sentence of 120 months' imprisonment and further asks the Court to follow that term of incarceration with a lifetime of supervised release.

## FACTUAL STIPULATION

Jason Craig Kane ("Kane") is a 52-year-old resident of Hagerstown, Maryland.

1

On March 17, 1995, Kane was convicted of Sexual Abuse of a Minor in the Alaska Superior Court seated in Anchorage, Alaska. On March 27, 2018, Kane was convicted of Possession of Child Pornography in the District Court for Washington County, Maryland, and was on probation at the time of this offense.

On August 8, 2023, Kane, communicated in a chatroom titled "ped drivers" on the web-based mobile application Wickr. Ped drivers was comprised of individuals actively participating in the discussion of child sexual abuse, and sharing child pornography and child erotica. An undercover HSI agent (UCA) participating within a public chatroom observed Kane, who used the moniker "ARMYSPC," actively engaged in the group as other members shared image and video files that depicted the sexual abuse of children.

Kane posted multiple computer-generated images that depicted the sexual abuse of minor children and child exploitation, including a computer-generated image made to resemble a pre-pubescent female being vaginally raped by an adult male.

On August 9, 2023, the UCA engaged in a private conversation with Kane on Wickr. During the conversation, Kane indicated a sexual preference for children ages two through twelve, shared that he had prior hands-on experience with his then three-year-old goddaughter, including that he "played with her bald pussy," and further indicated that he would be moving to Missouri in October 2023 where the goddaughter was then living, and that he was "going to get more." He also indicated that he lived in Maryland and was 50 years old.

Investigators were able to identify Kane through photos and posts primarily posted on Facebook. They learned that Kane was actively on probation for the possession of child pornography offense in Washington County, Maryland.

On September 8, 2023, law enforcement served a federal search warrant on Kane's home and his person. During an interview with investigators, Kane admitted that "bad stuff" would be found in his phone, and told investigators that and he had a tablet that also contained the Wickr application. Kane told investigators about his preference for pre-pubescent children, indicating that his sexual preference was for children ages ten to twelve.

During the execution of the search warrant, investigators seized Kane's cell phone, a Motorola GSM XT2163-4 Moto G Pure cellular phone, IMEI 357852526113140, and his Alcatel Tablet Model 9032Z, IMEI 016055000873113. The devices were both forensically examined by an HSI computer Forensic Examiner.

Twenty-seven images of children engaged in sexually explicit conduct were located on the phone, including 21 images depicting real children and 6 images depicting computer generated children engaged in sexually explicit conduct. The CFE located images within several chatrooms, including rooms titled "domino's (pizza slice emoji);" "ok;" "girls and peds;" "no lim fun;" and "young."

Multiple images located in "no lim fun" depicted a prepubescent male in the process of a diaper change, and the victim was strapped with a device expanding his anus. This device appeared to be a metal circle with six bolted hooks that were inserted into the child's anal cavity and attached to the circle device outside with wing nuts. These nuts appeared to be used to expand the child's anus, which as depicted in the images, was expanded in the device far beyond any natural state.

The tablet included three videos of children engaged in sexually explicit conduct, including a video titled "d0c92f20-34f3-42ce-a3c5-b9502aa56cb2.avi," approximately 11 minutes and 31 seconds in duration, that depicted an adult male inserting his penis into the mouth of a prepubescent female, and the adult male inserting his penis in the vagina of the prepubescent minor.

The Motorola GSM XT2163-4 Moto G Pure, and the Alcatel tablet phone were manufactured out of the state of Maryland. The child pornography found in Kane's possession was transported in or affecting interstate or foreign commerce, and was produced using materials that had been transported in or affecting interstate or foreign commerce. The child pornography that Kane possessed, received, and posted using his online accounts was transported in or affecting interstate or foreign commerce.

## PENALTIES AND SENTENCING GUIDELINES CALCULATION

Pursuant to 18 U.S.C. § 2252A(b)(2), Count One carries a statutory maximum sentence of 20 years, including a statutory minimum of 10 years, followed by a maximum term of a lifetime of supervised release. Count One also carries a $250,000 fine, and two separate special assessments, totaling $100 and $5000, respectively.

As calculated in the Presentence Investigation Report (PSR), dated March 14, 2025, the defendant's adjusted offense level is 28, and his criminal history category is II, resulting in an advisory U.S. Sentencing Guidelines range of 87-108 months. *See* ECF 37. The government concurs with the calculations as stated in the PSR.

## SENTENCING RECOMMENDATION

The parties have agreed upon a sentencing range of 120 months of imprisonment. Pursuant to 18 U.S.C. § 3553(a), the Court must consider several factors in fashioning a sentence that is sufficient but not greater than necessary to comply with the aims of sentencing. In contemplation of those factors, the government requests that this Court bind itself to the agreed upon sentence of 120 months and further requests that the defendant be placed on supervised release for the rest of his life.

A. **The Nature and Circumstances of the Offenses and History and Characteristics of the Defendant Support the Proposed Sentence.**

Pursuant to 18 U.S.C. § 3553(a)(1), the conduct of the defendant described above warrants a serious punishment. As reflected in the PSR, the defendant has a significant and repeated history of sexually deviant conduct. Prior to obtaining any convictions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Just a little over two years later, when the defendant was 20 years old, he engaged in the sexual abuse of a minor in Anchorage, Alaska. PSR ¶ 40. The defendant preyed on a child as she slept. This child, less than 13 years old, awoke to the defendant pulling her pants down and digitally penetrating her vagina. *Id*. Beyond the psychological trauma of becoming a victim of sexual abuse, the defendant physically hurt her. *Id*. The child's words reflected that, as did a medical examination. *Id*. The defendant received an eight-year sentence for the offense. *Id*. The conduct, though extremely serious, does not factor into the criminal history computation for the purposes of the guidelines. *Id*.

The defendant's next brush with the law occurred nearly 25 years later, but similarly underscores his predilection for young children. After a roommate uncovered evidence of child pornography on the defendant's computer, the defendant, then a registered sex offender because of his first conviction, admitted to police that he possessed sexually explicit images of children on his computer. PSR ¶ 41. He further admitted that he was sexually attracted to children as young as fourteen. *Id*. The defendant received five years for this offense. *Id*.

This conduct provides context for the defendant's current offense. In each of the defendant's prior convictions, and even during his interview with the agents in the instant case, he expressed contrition and remorse after the commission of each act, but never stopped the conduct.

5

And even then, the defendant's compliance only went so far. During the interview with agents, but prior to the seizure of his phone, the defendant attempted to delete the Wickr application. But for the quick action of an agent in grabbing the phone from the defendant's hand, the defendant would have succeeded in destroying evidence.

Additionally, the defendant sought new and innovative ways to satisfy his aberrant sexual urges. The defendant's devices contained multiple artificially engineered images of children engaging in sexually explicit conduct. In the age of artificial intelligence, the law has struggled to keep up. The ability of perpetrators to create "Deepfakes," or almost lifelike images of children performing perverse sexual acts, with a couple clicks, has further complicated the already daunting task of law enforcement officials seeking to curb the growing catalog of child pornography online. A CBS News report late last year found that there were more than 21,000 deepfake pornographic videos online, which accounted for a 460% increase from the year before.[1]

In addition to the clear and present danger to real children whose images can be manipulated, these artificially engineered images also present the potential for individuals who engage in the viewing and distribution of these images to graduate to worse conduct.

The defendant's history and current conduct represent all of these concerns. His criminal record and expressed desires forced law enforcement to move quickly to ensure that another child was not a victim of the defendant. Ten years in federal custody will prevent this and other crimes against children from occurring for the foreseeable future.

---

[1] *See* Jim Axelrod, *Teen victim of AI-generated "deepfake pornography" urges Congress to pass "Take It Down Act"* CBS News (Dec. 18, 2024), https://www.cbsnews.com/news/deepfake-pornography-victim-congress/

  **B.** **The Need for the Sentence Imposed.**

   **a.** **Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment Require the Requested Sentence.**

The sentence imposed in this case must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The numerous offenses encompassing the sexual exploitation of children are among the worst in our system of criminal justice. To put it mildly, these crimes are serious.

The possession of and distribution of pornographic images of children also highlights the ease with which these victims can be repeatedly abused. In the instant case, the images of the toddler strapped with a device expanding his anus appears to have been present in multiple chatrooms. That means any number of persons did in-fact save these images and send them to other people.

Moreover, these images seem to know no bounds and underscore the defendant's lack of respect for the law. The text group "no lim[it] fun," which seemingly indicated that no image, no matter how gratuitous or sadistic, went too far, represented some of the worst images. For example, one image depicted a pre-pubescent boy in bondage on a bed. The child's mouth was gagged with a red ball that was attached to two metal loops and a leather strap running around the back of his head. The child was on his back, completely naked with his legs extended up toward to the viewer. His hands were restrained in leather cuffs that were chained together as he used his bound hands to hold his legs under his knees. The child's genitalia and anus were completely exposed to the viewer.

These images are disgusting. The defendant used this online platform to view, trade, and possess grotesque images like these, and seemed to revel in it. He did so knowing the full

ramifications of his actions, knowing the conduct was illegal, and knowing that he was on probation for the exact same thing. For this, he must be punished. Ten years of imprisonment does just that.

### b. A Sentence of Ten Years Provides Deterrence and the Protection of the Community.

A sentence must also afford adequate deterrence to criminal conduct, to include specific deterrence to the defendant and general deterrence to the community at large, while also protecting the public from further crimes. 18 U.S.C. § 3553(a)(2)(B), (C). Here, in the defendant's over 30-year criminal history, his arrests and convictions have only been related to the sexual exploitation of children. Nothing has deterred the defendant from engaging in this particular type of behavior. He has shown that he is either incapable or unwilling to control his perverse sexual urges.

Nothing highlights this more than the fact that he was under active supervision by the Maryland Division of Parole and Probation for possession of child pornography at the time of this offense. If the defendant is willing to continue to view and trade child pornography while under supervision, it stands to reason that there is little else that would keep the defendant from committing offenses in the future.

Still, the general public must be deterred. The defendant's actions, fortunately, reflect a very small segment of the population. Those who peddle in child pornography are often acutely aware of the criminal laws associated with it. Press releases, news articles, and other forms of media highlighting the significant sentences given to individuals found guilty of committing similar acts can hopefully deter others from committing the same conduct. If only to impart the importance of complying with these laws for the greater good, the Court must sentence the defendant to the requested sentence.

Similarly, the Court must also look to the actions of the defendant and the risk he poses to the community in determining an appropriate sentence. For over 30 years, he has continued to seek sexually explicit images of children, and has repeatedly expressed desires to violate another child. It was this fact, the defendant's admission that he "played with [his goddaughter's] bald pussy" when she was three years old and that he was "going back to get more" upon his release from probation, that prompted law enforcement officials to move as quickly they did here.

The Court cannot turn a blind eye to this fact. The defendant was a little under two months away from being released from probation and moving to Missouri, as he had hoped. A family known to the defendant, who seemingly trusted him, stood to suffer an immeasurable harm if the defendant had his way. This Court must protect the putative victim, and others like her from the defendant.

c. **The Rehabilitative Aims of the Court Can be Satisfied with the Requested Sentence.**

18 U.S.C. § 3553(a)(2)(D) focuses on the of the rehabilitative aims of sentencing, and ensuring that the defendant is afforded vocational training, medical care, or other correctional treatment that may be needed. Although it is important to ensure the defendant receives the appropriate punishment, this aspect of sentencing may be of most importance to the community at large.

The defendant will eventually transition to federal custody, and hopefully avail himself of the programs of the BOP. One program of significance is the Sex Offender Management Program, a program designed to treat sex offenders while in custody. Identifying and addressing risk relevant behaviors are crucial to ensuring that upon release, the defendant can behave in an appropriate manner in whatever community he lives in.

## **CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 120 months to the Bureau of Prisons, to be followed by lifetime supervised released, impose a $100 special assessment, address the $5,000 additional special assessment, and order restitution if requested, as well as forfeiture.

                                  Respectfully submitted,

                                  Kelly O. Hayes
                                  United States Attorney

By: _____/s/_____
      Michael F. Aubin
      Assistant United States Attorney